No. 16-35688

_____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**
_____

**GLACIER FILMS (USA), INC., and**
**GLACIER FILMS 1, LLC**,

Plaintiffs-Appellants,

v.

**ANDREY TURCHIN**

Defendant-Appellee.

_____

**BRIEF OF APPELLANT**
_____

Appeal from the United States District Court
For the District of Oregon
3:15-cv-01817-SB
(Honorable Stacy Beckerman)

Carl D. Crowell, OSB# 982049
Crowell Law
943 Liberty St. SE
P.O. Box 923
Salem, OR 97308
Tel:  503-581-1240
carl@crowell-law.com

Of attorneys for Plaintiff-Appellant Glacier Films (USA), Inc., et al.

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Glacier Films (USA), Inc. is a Delaware

Corporation and Plaintiff-Appellant Glacier Films 1, LLC is a Louisiana

corporation.  No publicly traded company owns more than 10% of their

shares.


DATED: DECEMBER 28, 2016.


/s/  Carl D. Crowell
Carl D. Crowell, OSB No. 982049
email:  carl@crowell-law.com
503-581-1240
Crowell Law
P.O. Box 923
Salem, OR 97308

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................. **4**

**I.   INTRODUCTION** ...................................................................... **6**

**II.  JURISDICTION** ........................................................................ **6**

    **1.  District Court Jurisdiction** ................................................ **6**

    **2.  Appellate Jurisdiction** ..................................................... **7**

    **3.  Timeliness** ....................................................................... **7**

**III. ISSUE PRESENTED FOR REVIEW** ................................... **7**

**IV.  STATEMENT OF THE CASE** ............................................... **8**

    **1.  Litigation History** ............................................................ **8**

    **3.  Statement of Facts** .......................................................... **10**

**V.   SUMMARY OF ARGUMENT** ............................................... **12**

**VI.  ARGUMENT – ISSUE ON APPEAL** ...................................... **13**

    **1.  ASSIGNMENT OF ERROR:  The District Court erred in denying an award of attorney fees to Plaintiff-Appellee.** ................................................................ **13**

**VII. CONCLUSION** .......................................................................... **30**

**STATEMENT OF RELATED CASES** ....................................... **31**

**ADDENDUM** ................................................................................ **32**

# TABLE OF AUTHORITIES

## Cases

*Criminal Productions, Inc. and LHF Productions, Inc. v. Turchin*, 3:16-cv-01695-AC, (D. Or., filed August 23, 2016.) ...................................... 30, 31

*Entm't Research Grp. v. Genesis Creative Grp.*, 122 F.3d 1211 (9th Cir. 1997) ................................................................................................ 13

*Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996)................................. 13

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ...................................... 14, 25

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545 (9th Cir. 1989) ................................................................................ 12, 13, 18, 26

*Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608 (7th Cir. 2002) ................ 16

*Grateful Dead Productions v. Come 'N' Get It*, Civ. No. 1:88-cv-04471-MEL-THK (S.D.N.Y., March 24, 1994) .................................................. 16

*Hall v. Bolger*, 768 F.2d 1148 (9th Cir. 1985) ............................................. 13

*Kirtsaeng v. John Wiley & Sons, Inc*, 136 S. Ct. 1979 (2016) ... 14, 19, 24, 25

*Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996). ........ 14, 25, 30

*Maljack Productions, Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881 (9th Cir.1996). ................................................................................ 16

*Mattel, Inc. v. MGA Entm't*, 705 F.3d 1108 (9th Cir. 2013)........................ 24

*McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316  (9th Cir.1987) .............. 12

*Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*, 345 F. App'x 244 (9th Cir. 2009, unpublished) ................................................... 15

*Quesada v. Thomason*, 850 F.2d 537 (9th Cir. 1988) ................................. 16

*SOFA Entm't, Inc. v. Dodger Prods., Inc*. 709 F.3d 1273 (9th Cir. 2003) ... 25

*Sony BMG Music Entertainment v. Tenenbaum*, 660 F. 3d 487 (1st Cir., 2011), ........................................................................ 20, 21, 27

*Twentieth Century Fox Film Corp. v. Streeter*, 438 F.Supp.2d 1065 (D. Ariz., 2006) ................................................................................. 26

**Statutes**

17 U.S.C. § 505 ............................................................... 12, 13, 30

28 U.S.C. § 1291 ........................................................................... 7

28 U.S.C. § 1331 ........................................................................... 7

28 U.S.C. § 1338 ........................................................................... 6

28 U.S.C. § 636(c) ........................................................................ 7

*Digital Theft Deterrence and Copyright Damages Improvement Act of 1999*, P. L. No. 106-160, § 2, 113 Stat. 1774 (1999). ......................................... 20

**Other Authorities**

Anandashankar Mazumdar, legal editor of BNA's Patent, Trademark & Copyright Journal, *Code & Conduit Podcast* (2016), http://www.bna.com/lights-camera-litigate-b73014446365/ (last visited Dec. 27, 2016) ............................................................................ 25

H.R. Rep. No. 106-216, 106th Cong., 1st Sess. 3 (1999) ........................... 21

*Privacy and Piracy: The Paradox of Illegal File Sharing on Peer-to-Peer Networks and the Impact of Technology on the Entertainment Industry: Hearing Before the Permanent Subcomm. on Investigations of the Sen. Comm. On Governmental Affairs*, 108th Cong., 1st Sess. 10 (2003) (statement of Sen. Levin) ........................................................ 22

## I.    INTRODUCTION

Plaintiff-Appellants Glacier Films (USA), Inc. and Glacier Films 1, LLC (collectively "Glacier") are owners of the rights in the motion picture *American Heist*, a notable motion picture released nationally which is now the subject of significant online piracy, including download and distribution through the peer-to-peer bittorrent network.  Defendant-Appellee Andrey Turchin ("Turchin") is a user of bittorrent whose download and distribution of the motion picture *American Heist* is admitted to be willful, intentional, in disregard of and indifferent to Plaintiffs' rights with the intent to deprive Plaintiffs of income and cause Plaintiffs harm.

After the defendant failed to appear, the court *sua sponte* appointed *pro bono* counsel and on conferral the parties resolved this action for injunctive relief and minimum damages, with cost and fees to be awarded by the Magistrate.

In review of Glacier's motion, the Magistrate declined to award any fees and Plaintiffs have appealed.

## II.    JURISDICTION

### 1. District Court Jurisdiction

District court jurisdiction is under 28 U.S.C. § 1338 and 28 U.S.C. §

1331, as one or more of the claims at issue arises under federal law, namely the Copyright Act. Magistrate jurisdiction is by consent pursuant to 28 U.S.C. § 636(c). [Excerpts of Record, "ER" 34, ¶ 4, Stipulation to Magistrate Jurisdiction.]

### 2. Appellate Jurisdiction

This is an appeal from a final order on costs and fees following a stipulated consent judgment against Defendant and consent to Magistrate jurisdiction. This appeal is pursuant to 28 U.S.C. § 1291.

### 3. Timeliness

This appeal is timely under Fed. R. App. P. 4(a)(1). Order appealed entered on August 10, 2016. [ER 6] Plaintiff-Appellants filed their notice of appeal on August 26, 2016. [ER 4]

### III. ISSUE PRESENTED FOR REVIEW

**1. Whether the District Court abused its discretion in declining to award Plaintiff-Appellant attorney fees pursuant to 17 U.S.C. § 505.**

### Addendum:

Filed and bound with this brief are relevant statues and authorities.

## IV.    STATEMENT OF THE CASE

### 1. Litigation History

Glacier has been the victim of countless acts of piracy and its motion picture *American Heist* been downloaded and distributed hundreds of thousands of times.  In this action, Glacier initially identified a defendant by their IP address ("IPA") of 73.164.151.227, which was observed using the uTorrent software on a Macintosh to distribute the motion picture over 80 times, [ER 20] and was also observed associated with over 700 other potentially infringing titles downloaded through bittorrent, [ER 24, a limited portion of the full log]. Glacier filed an initial compliant on September 25, 2016 against the then unknown party identified as Doe-73.164.151.227, 73.164.151.227 being the internet protocol address ("IPA") that was used to distribute Glacier's motion picture *American Heist* along with hundreds of other copyrighted titles.  Glacier sought and obtained early leave to subpoena Internet service provider ("ISP") Comcast for the identity of the party assigned IPA 73.164.151.227.  [ER 62]    Comcast identified the defendant-appellee as the subscriber assigned the IPA, but the subscriber was non-responsive to letters.  Glacier then sought and obtained leave for a limited deposition of the subscriber pursuant to FRCP 45. [ER 9, Ecf. 9, 13] The defendant-appellee Turchin appeared for his deposition and admitted to

8

using bittorrent even after notice of this action. [ER 29]  Turchin was named

as the defendant in a First Amended Complaint on February 17, 2016, with

allegations that he personally infringed Glacier's copyrights.  Based on the

vast scope of infringing activity, and persistence after notice, it was alleged

his conduct was "willful, intentional, in disregard of and indifferent to

plaintiffs' rights with the intent to deprive plaintiffs of income and cause

plaintiffs harm."  [ER 44]  A Notice of Default was served on Turchin on

April 4, 2016.  [ER 42]  On Turchin's failure to appear a Motion for Default

was filed on May 2, 2016.  The Court *sua sponte* appointed pro bono

counsel on May 20, 2016.  [ER 64, Ecf. 26, 31] Turchin then field an

Answer on June 24, 2016 admitting to downloading Glacier's motion

picture, but raising a number of affirmative defenses and denying Glacier

any right to relief. [ER 65, Ecf. 37]. An Amended Answer was filed on June

29, 2016, also admitting to downloading Glacier's motion picture and

denying Glacier any right to relief.  [ER 33, Ecf. 40].

The parties conferred with the Magistrate on July 6, 2016 as to a

means of resolving the case [ER 65, Ecf. 41] and on July 8, 2016, the a

proposed Stipulated Consent Judgment was entered to resolve the dispute,

which included Turchin's stipulation, "to the allegations that give rise to

liability for the infringement of plaintiffs' rights."  [ER 30]  The parties also

9

stipulated to minimum statutory damages of $750 and an award of reasonable attorney fees.  [ER 31, ¶ 6, 7]

A motion for attorney fees was filed on July 20, 2016 [ER 66, Ecf. 46] and the Magistrates Order denying attorney fees, from which Glacier appeals, was entered on August 10, 2016.  [ER 50]

### 3. Statement of Facts

#### a.  *The parties*

Plaintiff-Appellant Glacier Films (USA), Inc. is a Delaware Corporation and Plaintiff-Appellant Glacier Films 1, LLC is a Louisiana corporation, both affiliates of the Glacier Films production company. Defendant-Appellee Andrey Turchin is an individual and resident of Oregon.

#### b.  *Facts of the complaint*

The action in the District Court was resolved by Turchin's stipulation to "the allegations that give rise to liability for the infringement of plaintiffs' rights."  [ER 31, ¶ 5 ] Such allegations include:

18. Defendant, without the permission or consent of plaintiffs, copied and distributed plaintiffs' motion picture through a public BitTorrent network.

19. Defendant's actions infringed plaintiffs' exclusive rights under The Copyright Act.

20. Defendant's conduct has been willful, intentional, in disregard of and indifferent to plaintiffs' rights with the intent to deprive plaintiffs

10

of income and cause plaintiffs harm.

21. As a direct and proximate result of defendant's conduct, plaintiffs' exclusive rights under 17 U.S.C. § 106 have been violated.

22. One or more plaintiffs are entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

[ER 46-47, First Amended Complaint]

   c.  *Facts of record*

In addition to the stipulated allegations of the First Amended

Complaint, of record in Glacier's motion for attorney fees are facts

submitted without opposition, including Mr. Turchin's own testimony of

continued bittorrent use as of Feb. 9, 2016, well into the case:

> Q: Do you use BitTorrent software to download any content?
> A: Not with BitTorrent.
> Q: What do you use to download?
> A: UTorrent.
> Q :Okay. And when was the last time you used uTorrent to download anything?
> A: Let's see. Yesterday.

[ER 29.]

Glacier also submitted records of multiple observed instances of

Turchin distributing Glacier's motion picture [ER 20] and an excerpt of

some of the hundreds of other titles trafficked by Turchin.  [ER 24.]

   d.  *Order of the District Court*

In the order entered August 10, 2016, the District Court relied on a

number of demonstrably false extrinsic facts and presumptions, including

the presumption that "common sense supports a conclusion that a $750 financial penalty for illegal downloading one movie is more than sufficiently punitive to deter other from illegally downloading free movies on the BitTorrent network . . ." and a fee award would not be "necessary to encourage Plaintiffs to continue to protect their rights." [ER 12] The District Court also wrongly relies on cases brought by Glacier's counsel on behalf of other parties for the supposition that counsel "targets" "particularly vulnerable individuals" for economic exploitation, when the clear record is all costs, fees and damages were waived and no economic recovery was sought in the identified cases. [ER 14]

## V.    SUMMARY OF ARGUMENT

In a copyright action it is proper to award a prevailing plaintiff reasonable attorney's fees and costs for willful infringement. 17 U.S.C. § 505; *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989) *cert. denied*, 494 U.S. 1017 (1990) (*citing McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir. 1987)). Under 17 U.S.C. § 505, considering all relevant factors as applied to *this case*, an award of attorney fees is proper and furthers the intent of the Copyright Act. It is an abuse of discretion to find otherwise.

## VI.    ARGUMENT – ISSUE ON APPEAL

## 1. ASSIGNMENT OF ERROR:  The District Court erred in denying an award of attorney fees to Plaintiff-Appellee.

### A.    Standard of Review

The Ninth Circuit reviews a district court's award of attorney fees for abuse of discretion. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d at 1556 (9th Cir. 1989). "A district court's award of attorney's fees 'does not constitute an abuse of discretion unless it is based on an inaccurate view of the law or a clearly erroneous finding of fact.'" *Entm't Research Grp. v. Genesis Creative Grp.,* 122 F.3d 1211, 1216–17 (9th Cir. 1997) (quoting *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996) ("*Fogerty II*"). "[E]lements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable de novo." *Fogerty II*, 94 F.3d at 556 (quoting *Hall v. Bolger*, 768 F.2d 1148, 1150 (9th Cir. 1985)).

### B.    Legal Standard

In a copyright infringement action attorney fees are available under 17 U.S.C. § 505.  The proper factors to consider in awarding attorney fees are (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness; and (5) the need to advance considerations of compensation and deterrence.  *Kirtsaeng v. John Wiley & Sons, Inc*, 136 S.

Ct. 1979, 1985 (2016); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996).

### C.    *Argument on Assignment of Error*

In denying attorney fees the District Court focused on only two of the factors: (a) the degree of success, and (b) the need for deterrence.  It declined to consider the other factors of motivation, frivolousness, or objective unreasonableness.  When all factors are properly reviewed, each supports an award of attorney fees and requires a reversal of the District Court.

Glacier's claims have been admitted and are not frivolous. The motivation of Glacier is to enforce its rights as it is active in the industry with a legitimate motion picture with major principal actors.  Turchin's conduct is was "willful, intentional, in disregard of and indifferent to plaintiffs' rights with the intent to deprive plaintiffs of income and cause plaintiffs harm."  [ER 55]  There is no issue of objective unreasonableness by Glacier in the pursuit of its claim unless the exercise of the sole and exclusive remedy for enforcing copyrights is to be deemed objectively unreasonable.  Despite the various iterations of improper affirmative defenses, *the defendant never had any reasonable legal or factual defenses*.

### a. Glacier's degree of success supports an award of attorney fees.

In evaluating the degree of Glacier's success the District Court evaluated two facts: the damages awarded ($750), and the fact that this defendant is simply one of thousands of infringers. Contrary to the conclusion of the District Court, both of these facts should *support* an award of attorney fees.

### i. *Minimum damages supports an award of attorney fees.*

The District Court was in error in its evaluation of the minimum damages award with respect to an award of attorney fees. Relying on *Milton H. Greene Archives, Inc. v. Julien's Auction House LLC*, 345 F. App'x 244, 249 (9th Cir. 2009, unpublished) ("*Archive*s") is inappropriate as *Archive*s relates to a fact specific matter and does not stand for the general legal principles presented by the Court. *Archives* specifically dealt with a *reduction* in fees based on the District Court's concerns with specific conduct and work performed by counsel together with non-willful infringement.

Similarly, the court was in error relying on the unpublished opinion of *Grateful Dead Productions v. Come 'N' Get It*, Civ. No. 1:88-cv-04471-

MEL-THK (S.D.N.Y., March 24, 1994) as that action involved an award of over $100,000 more than 20 years ago and noted the substantial award (for the time) was sufficient to both properly compensate the plaintiff *and* deter the infringer.

The judgment obtained by Glacier, wherein all allegations giving rise to liability are admitted should be deemed a "total success." *See e.g.*, *Maljack Productions, Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996). In cases where there are well established public interests, which includes copyrights, "it is inappropriate for a district court to reduce a fee award below the lodestar simply because the damages are small." *Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir. 1988). In particular in the context of lesser damages, the Ninth Circuit has noted the need for attorney fees otherwise copyright holders will not prosecute infringement actions when the amount at stake is low. *Magnuson*, 85 F.3d at 1432.

The Seventh Circuit has gone so far as to establish a presumption of entitlement to attorney fees "when the monetary stakes are small." *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 610–11 (7th Cir. 2002) (Posner, J.) ("[W]illful infringements involving small amounts of money cannot be adequately deterred (and remember 'the need in particular circumstances to

advance consideration of . . . deterrence') without an award of attorneys' fees. No one can prosecute a copyright suit for $3,000. [W]e go so far as to suggest, by way of refinement of the *Fogerty* standard, that the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees.").

ii. *Success against one of the many infringers supports an award of attorney fees.*

The second fact reviewed by the District Court in considering the degree of Glacier's success is that the defendant is simply one of thousands. But when properly considered, this fact also supports the award of attorney fees or at least should not weigh against Glacier. As noted by the District Court in its opinion, Glacier and similar plaintiffs are required to pursue infringers individually in the District of Oregon. [ER 7, Fn. 1; ER 58, Standing Order 2016-8]. Glacier should not be required by local rule to pursue the multitudes of infringers individually and then be denied attorney fees for complying with the standards set in the District of Oregon denying joinder. More significantly the Copyright Act specifically contemplates the large number of infringers and difficulty in identifying and pursuing infringers with the need to award substantial damages, costs and fess to incentivize such actions. While such compensation may take the form of

17

damages of up to $150,000 for the acts of the defendant, Glacier has instead opted to accept injunctive relief and minimum damages, thus a full award of costs and fees is proper to comport with the intent of the Copyright Act. *See infra* discussing the statutory history.

Under Ninth Circuit precedent, the directives of the District of Oregon in Standing Order 2016-8, and the clear intent of the Copyright Act, neither the amount of damages, nor the fact that the action addresses the infringing activities of a singular party are factors weighing against Glacier's success in this action. If anything, the recognition of the large number of infringers supports a mandate for greater statutory damages and an agreement to minimum damages supports the need for an award of attorney fees to fully compensate a plaintiff and encourage further legitimate copyright enforcement actions.

The proper factors in determining the degree of success should include Glacier's identification of a specific willful infringer and the obtaining of the relief requested, such as the obtained injunction. *Frank Music Corp.*, 886 F.2d at 1556. Forcing a plaintiff to pursue all of the masses of infringing defendants individually and separately and then demanding that plaintiff also extract significant damages in addition to other relief would be contrary to the Standing Orders, contrary to the express

18

concerns of the District Court and other judges in this Circuit, and fail to advance the goals of the Copyright Act.[1]

When properly evaluated Glacier's success in this action is complete and supports an award of attorney fees.

### b. The need for deterrence supports an award of attorney fees.

The second factor evaluated by the District Court was deterrence and whether the payment of a total sum of approximately $1,000 is a sufficient deterrent. A court should consider "'the need in particular circumstances to advance considerations of compensation and deterrence.'" *Kirtsaeng*, 136 S. Ct. 1979 at 1985, (quoting *Fogerty*, 510 U.S. at 534 n.19).

In 1999, Congress substantially increased the statutory damages from $100,000 to $150,000 for the specific purpose of deterring bittorrent and peer-to-peer infringing activity such as that of the defendant in this action. *See Digital Theft Deterrence and Copyright Damages Improvement Act of 1999*, P. L. No. 106-160, § 2, 113 Stat. 1774 (1999). [A. 3] After careful study, hearings and evaluation of evidence, the legislature increased the damages available to plaintiffs to both incentivize plaintiffs to bring actions

---

[1] For the District Court to both deny attorney fees due to a potential for exploitation of the significant damages available to Glacier and deny fees for a stipulation to minimal damages approaches cognitive dissonance.

and to act as a deterrence to those such as the defendant. *Id.* The intent of Congress was to support actions such as Glacier's to both curb the epidemic of infringing activity and to benefit the public as a whole.

The public harms caused by individuals who, like Turchin, have used peer-to-peer Internet networks to copy and distribute protected works without authorization, are substantial. The First Circuit has found that the proliferation of peer-to-peer networks from 1999 onward has had a significant negative impact on the entertainment industry. *Sony BMG Music Entertainment v. Tenenbaum*, 660 F. 3d 487, 492 (1st Cir. 2011), *cert denied*, 132 S Ct 2431 (2012). The *Tenenbaum* Court acknowledged Congress raised the available statutory damages with the specific intent of deterring unlawful peer-to-peer conduct and in support of actions against infringers such as in this action. *Id.* at 500 ("Tenenbaum argues Congress was unaware that suits like this could be brought and so could not have intended the statute to apply here. The argument is wrong both on the law and on the facts. Congress did contemplate that suits like this were within the Act.").

The legislative history of the 1999 amendment of section 504(c) shows that Congress enacted these large increases in damages for the specific purpose of deterring Internet-based, copyright infringement.

> By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works. * * * Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and they should stop the activity or face legal sanction. In light of this disturbing trend, it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct.

H.R. Rep. No. 106-216, 106th Cong., 1st Sess. 3 (1999); *cited by Sony BMG Music Ent.*, 660 F.3d at 500. [A. 4]

The ubiquity of unauthorized file-sharing and the aggregate harm it causes underscores the need for awards that will serve as a strong deterrent to future copyright infringement. As one member of Congress remarked in hearings exploring the impact of peer-to-peer networks on copyright protection:

> In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines. In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that may participants seem to consider it equivalent to jaywalking – illegal but no big deal. But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used – called "file sharing" as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm.

21

*Privacy and Piracy: The Paradox of Illegal File Sharing on Peer-to-Peer Networks and the Impact of Technology on the Entertainment Industry: Hearing Before the Permanent Subcomm. on Investigations of the Sen. Comm. On Governmental Affairs*, 108th Cong., 1st Sess. 10 (2003) (statement of Sen. Levin). [A.14]

Copyright infringement over peer-to-peer networks poses a particularly serious threat to creators like Glacier. As Senator Levin's remarks indicate, infringement is easy and ubiquitous and readily accomplished by virtually any home computer user. It occurs on a massive scale and causes serious economic harm. Moreover, the decentralized nature of peer-to-peer networks makes it particularly difficult to locate and identify infringers and ascertain the full harm caused by any one infringer to an individual copyright holder–an express reason why Congress provided for statutory damages in lieu of actual damages.

At the same time as the growing harm recognized by Congress, many infringers continue to regard their own acts of infringement as harmless and inconsequential and see the enforcement of copyrights and actions such a Glacier's as improper and some form of invasion of their personal liberties. Congress plainly disagrees and regards unauthorized file-sharing of protected works for what it is: stealing that causes significant harm to creators and the public. While actions such as the present one are clearly disapproved of by the District Court, Congress and the law support the

actions of plaintiffs such as Glacier and the Copyright Act dictates the means employed, litigation, as the sole and exclusive remedy available. *Ibid.*

Given the deference owed to congressional intent and the well-documented threat to the creative industries posed by widespread copyright infringement over peer-to-peer networks, it is clear that either through damages, awards of attorney fees, or a combination of the two, plaintiffs should be *incentivized* to combat the public harm caused by the unauthorized distribution of protected works over the Internet.

As Congress has made the determination that $100,000 in available statutory damages is insufficient as a deterrent for those such as the defendant, the proximate damages and costs noted by this Court of $1,000 is also clearly insufficient to act as a deterrence or to provide proper compensation.  This is further evidenced by the continued plague of infringing activity in the District of Oregon and growing number of defendants that disregard Glacier's and other copyright plaintiff's claims by simply allowing defaults to be entered against them as minimum damages are often all that they might suffer.

///

///

23

### c. The remaining factors support an award of attorney fees.

Glacier's actions to enforce its rights cannot be deemed to be frivolous and its motivation is clearly to enforce the rights in a major motion picture protected by the Copyright Act, waiving any claims for sizable damages. To the extent there is any objective unreasonableness, such would be solely on the part of Turchin who filed multiple answers, each admitting to the download of Glacier's film yet in each raising specious affirmative defenses and denying that Glacier was entitled to any right to relief. [ER 33]

All of these factors clearly support an award of attorney fees in this action.

### d. Glacier's actions are in clear furtherance of the Copyright Act.

The Ninth Circuit has held that "[t]he most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act," *Mattel, Inc. v. MGA Entm't*, 705 F.3d 1108, 1111 (9th Cir. 2013); *see also Kirtsaeng*, 136 S. Ct. at 1979. The primary purpose of the Copyright Act is to "encourage the production of original literary, artistic, and musical expression for the good of the public."

24

*SOFA Entm't, Inc. v. Dodger Prods., Inc.* 709 F.3d 1273, 1280 (9th Cir. 2003).

Furthering the Copyright Act also calls for a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work. *See Fogerty*, 114 S. Ct. 1023. Accordingly, fee awards under §505 should encourage the types of lawsuits that promote those purposes such as with the present action. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016). With this action Glacier has unquestionably furthered the Copyright Act by directly addressing the persistent infringing actions of Mr. Turchin. There is no argument Turchin's theft furthers the Act. With the statutory minimum damages in this case, an award of attorney fees is essential to advance the statutory considerations of compensation and deterrence. *Magnuson v. Video Yesteryear,* 85 F.3d at 1432.

The Court was in error in finding "exercising the Court's discretion to require Defendant to pay thousands of dollars in attorney fees, for illegally downloading a single movie, would render an inequitable outcome that is inconsistent with the policies served by the Copyright Act." This is contrary to the clear intent and purposes of the Copyright Act.

In an evaluation of bittorrent enforcement actions by Malibu Media, the most prolific actor combatting peer-to-peer piracy, Anandashankar Mazumdar, legal editor of BNA's Patent, Trademark & Copyright Journal stated, "The Copyright act is intended to give creators legally enforceable rights, now **Malibu Media is doing exactly what the copyright seems to contemplate** they will do. They will create works, sell them and distribute them and if somebody infringes their right they will go to court and make them stop." *Code & Conduit Podcast* (2016), http://www.bna.com/lights-camera-litigate-b73014446365/ (last visited Dec. 27, 2016). This position is supported by careful study and the Congressional Record as argued above.

An award of attorney fees promotes the protection of copyrights and furthers the goal of deterrence, by encouraging infringement actions in instances such as the present case. *Twentieth Century Fox Film Corp. v. Streeter*, 438 F.Supp.2d 1065 (D. Ariz., 2006); *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d at 1556 ("[Attorney fee awards] serve the purpose of encouraging private enforcement and deterring infringements.").

The plague of piracy is real and causes real harm. The problem is not too many enforcement actions; **the problem is there are too many infringers**. The Copyright Act clearly contemplates and even focuses on supporting the actions of Glacier and those acting in accord with Glacier.

*Tenenbaum,* 660 F.3d at 500. The *exclusive* remedy crafted by Congress and enacted into law is for Glacier and other rights holders to take the exact action taken in this case with the intent that damages be significant and attorney fees would be awarded in the instance of a willful infringer to properly compensate rightsholders. Contrary to the findings of the District Court, an award of attorney fees in the present action would not be inconsistent with the Copyright Act, but would further the express intent of Congress.

### D. *Factual Errors of The District Court*

In addition to the errors of law as reviewed above, the District Court also relied on a number of facts or presumptions that are demonstrably false.

### a. There is no improper "targeting."

In note 4, the District Court makes an error in referencing "targeting" "particularly vulnerable individuals." [ER 14] As outlined in the opinion of the District Court, a plaintiff in actions such as this does not know the identity of an individual when it brings a claim, only the scope of the infringing activity. There is no "targeting" of any individuals, only of infringing IPA's, often trafficking in hundreds of titles and often with prior DMCA notices (17 U.S.C. § 512 warnings).

27

The type of "targeting" claimed by the District Court is simply not possible with current technology. All Plaintiff initially sees is a series of numbers, and indeed, takes great care and diligence in ensuring that it accurately identifies people through these numbers after the courts grant leave to do so. In the few instances cited of "particularly vulnerable individuals" being brought to litigation, plaintiffs have in these cases, and many other cases, waived extracting costs, fees and damages to simply address and stop persistent infringing activity while respecting the financial burdens of these individuals. *See Cobbler Nevada, LLC v. Snapp*, No. 3:15-cv-01769-SB (D. Or. April 4, 2016, 2015). [A. 17]

### b. There are no demands for $150,000.

The District Court's concerns about "the threat of a statutory damage award that could theoretically reach $150,000" are not a basis for denying fees. The maximum statutory damages in this and similar actions is not a threat from Glacier as no such demands were made. Any "threat" of $150,000 in damages was created by Congress to address the harm caused by those such as Turchin. The District Court's concerns in evaluating the statutory damages enacted by Congress would be akin to refusing to sentence a party guilty of a crime because the Court deemed the maximum

allowable sentence excessive.[2]  As outlined above, Congress specifically intended penalties of $150,000 to weigh over the head of infringers such as Turchin in this action–namely those that engage in willful peer-to-peer copyright infringing activity.  That Glacier stipulated to minimum damages ($750) in this action should assuage any concerns for the potential for abuse or objections to the statutory framework crafted by Congress.  But it is error for the District Court act in a matter intended to negate the clear intent of the law.

### c.  The total sum awarded in this action is demonstrably insufficient.

The District Court's "common sense" position that $750 is a sufficient deterrent is not only contrary to the express findings of Congress which found a maximum of $100,000 in damages as insufficient, but is also demonstrably false in this action as the Defendant-Appellee Turchin, only days after entry of the judgment against him, was again observed pirating more content through bittorrent and is now a defendant in another proceeding of *Criminal Productions, Inc. and LHF Productions, Inc. v.*

---

[2] The reviews and commentary on sentencing, statutory minimums and maximums, and utility of plea-bargaining are countless, but the solution is not to disregard the law.

29

*Turchin*, 3:16-cv-01695-AC, (D. Or., filed August 23, 2016.) [3] [ER 4.]

Contrary to the express findings of Congress and intent of the Copyright Act, the opinion and position of the District Court is demonstrably false, and has been accepted by Turchin and others as a disapproval of copyrights and actions to enforce such rights, and is being perceived as tacit approval of bittorrent theft.


## VII.   CONCLUSION

Plaintiff-Appellant Glacier respectfully requests this Court reverse the District Court's denial of an award of attorney fees and Order the prayed attorney fees are properly awarded pursuant to 17 U.S.C. § 505 in furtherance of the Copyright Act and the Stipulated Consent Judgment entered in this action.

To award any less would be contrary to the express intent of the Copyright Act's goal of supporting the enforcement of rights and deterring copyright infringements in a case such as this. *Magnuson,* 85 F.3d at 1432.

---

[3] This separate proceeding was originally filed August 23, 2016 against an unknown party, identified only by an IPA with a persistent volume of infringing activity.  The identification of Turchin as the subscriber was not revealed until September 26, 2016.  An Amended Complaint naming Turchin was filed Dec. 12, 2016.

Plaintiff-Appellant Glacier further requests an award of reasonable attorney fees for this appeal.

Respectfully submitted December 28, 2016.

/s/ Carl D. Crowell
Carl D. Crowell, OSB No. 982049
email: carl@crowell-law.com
503-581-1240
Crowell Law
P.O. Box 923
Salem, OR 97308

---

## STATEMENT OF RELATED CASES

There are no known related cases pending before this Court.

Pending at the District Court is the matter *Criminal Productions, Inc. and LHF Productions, Inc. v. Turchin*, 3:16-cv-01695-AC, filed August 23, 2016. Defendant-Appellee in this action being the defendant for the exact same conduct, the bittorrent download and distribution of motion pictures, all conduct subsequent to the judgment in this matter.

Dated: December 28, 2016.

/s/ Carl D. Crowell
Carl D. Crowell, OSB No. 982049
email: carl@crowell-law.com
503-581-1240
Crowell Law
P.O. Box 923
Salem, OR 97308

No. 16-35688

_____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**
_____

**GLACIER FILMS (USA), INC., and
GLACIER FILMS 1, LLC,**

v.

**ANDREY TURCHIN**
_____

**ADDENDUM**
_____

Carl D. Crowell, OSB# 982049
Crowell Law
943 Liberty St. SE
P.O. Box 923
Salem, OR 97308
Tel: 503-581-1240
carl@crowell-law.com

Of attorneys for Plaintiff-Appellant Glacier Films (USA), Inc., et al.

**Table of Contents**

17 U.S.C. § 505 ........................................................................................ A. 2

Digital Theft Deterrence and Copyright Damages Improvement Act of 1999, P. L. No. 106-160, 2, 113 Stat. 1774 (1999) ............................................ A. 3

H.R. Rep. No. 106-216, 106th Cong., 1st Sess. 3 (1999) .......................... A.4

Privacy and Piracy: The Paradox of Illegal File Sharing on Peer-to-Peer Networks and the Impact of Technology on the Entertainment Industry: Hearing Before the Permanent Subcomm. on Investigations of the Sen. Comm. On Governmental Affairs, 108th Cong., 1st Sess. 10 (2003) (statement of Sen. Levin) [EXCERPT] ................................................. A.14

*Cobbler Nevada, LLC v. Snapp*, No. 3:15-cv-01769-SB (D. Or. April 4, 2016, 2015) ................................................................................................ A.17

---

### 17 U.S. Code § 505 - Remedies for infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

113 STAT. 1774          PUBLIC LAW 106–160—DEC. 9, 1999

Public Law 106–160
106th Congress

## An Act

Dec. 9, 1999

[H.R. 3456]

To amend statutory damages provisions of title 17, United States Code.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Digital Theft Deterrence and Copyright Damages Improvement Act of 1999.

17 USC 101 note.

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Digital Theft Deterrence and Copyright Damages Improvement Act of 1999".

**SEC. 2. STATUTORY DAMAGES ENHANCEMENT.**

Section 504(c) of title 17, United States Code, is amended—
 (1) in paragraph (1)—
  (A) by striking "$500" and inserting "$750"; and
  (B) by striking "$20,000" and inserting "$30,000"; and
 (2) in paragraph (2), by striking "$100,000" and inserting "$150,000".

28 USC 994 note.

Deadline.

**SEC. 3. SENTENCING COMMISSION GUIDELINES.**

Within 120 days after the date of the enactment of this Act, or within 120 days after the first date on which there is a sufficient number of voting members of the Sentencing Commission to constitute a quorum, whichever is later, the Commission shall promulgate emergency guideline amendments to implement section 2(g) of the No Electronic Theft (NET) Act (29 U.S.C. 994 note) in accordance with the procedures set forth in section 21(a) of the Sentencing Act of 1987, as though the authority under that Act had not expired.

17 USC 504 note.

**SEC. 4. EFFECTIVE DATE.**

The amendments made by section 2 shall apply to any action brought on or after the date of the enactment of this Act, regardless of the date on which the alleged activity that is the basis of the action occurred.

Approved December 9, 1999.

LEGISLATIVE HISTORY—H.R. 3456:

CONGRESSIONAL RECORD, Vol. 145 (1999):
 Nov. 18, considered and passed House.
 Nov. 19, considered and passed Senate.
WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 35 (1999):
 Dec. 9, Presidential statement.

A. 3

| 106TH CONGRESS<br>*1st Session* } | HOUSE OF REPRESENTATIVES | { REPORT<br>106–216 |
|---|---|---|

## COPYRIGHT DAMAGES IMPROVEMENT ACT OF 1999

———————

JULY 1, 1999.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

———————

Mr. COBLE, from the Committee on the Judiciary,
submitted the following

# R E P O R T

[To accompany H.R. 1761]

[Including cost estimate of the Congressional Budget Office]

The Committee on the Judiciary, to whom was referred the bill (H.R. 1761) to amend provisions of title 17, United States Code, having considered the same, reports favorably thereon with an amendment and recommends that the bill as amended do pass.

TABLE OF CONTENTS

| | Page |
|---|---|
| The Amendment | 1 |
| Purpose and Summary | 2 |
| Background and Need for the Legislation | 2 |
| Hearings | 4 |
| Committee Consideration | 4 |
| Committee on Government Reform Findings | 5 |
| New Budget Authority and Tax Expenditures | 5 |
| Congressional Budget Office Cost Estimate | 5 |
| Constitutional Authority Statement | 6 |
| Section-by-Section Analysis | 6 |
| Changes in Existing Law Made by the Bill, as Reported | 9 |

The amendment is as follows:
Strike out all after the enacting clause and insert in lieu thereof the following:

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Copyright Damages Improvement Act of 1999".

69–006

A. 4

2

**SEC. 2. STATUTORY DAMAGES ENHANCEMENT.**

Section 504(c) of title 17, United States Code, is amended—
    (1) in paragraph (1)—
        (A) by striking "$500" and inserting "$750"; and
        (B) by striking "$20,000" and inserting "$30,000"; and
    (2) in paragraph (2)—
        (A) by inserting "(A)" after "(2)";
        (B) by striking "$100,000" and inserting "$300,000";
        (C) by inserting after the second sentence the following:
"(B) In a case where the copyright owner demonstrates that the infringement was part of a repeated pattern or practice of infringement, the court may increase the award of statutory damages to a sum of not more than $250,000 per work."; and
        (D) by striking "The court shall remit statutory damages" and inserting the following:
"(C) The court shall remit statutory damages".

**SEC. 3. SENTENCING COMMISSION GUIDELINES.**

Section 2(g) of the No Electronic Theft (NET) Act (28 U.S.C. 994 note) is amended by striking paragraph (2) and inserting the following:
"(2) In implementing paragraph (1), the Sentencing Commission shall amend the guideline applicable to criminal infringement of a copyright or trademark to provide an enhancement based upon the retail price of the legitimate items that are infringed upon and the quantity of the infringing items. To the extent the conduct involves a violation of section 2319A of title 18, United States Code, the enhancement shall be based upon the retail price of the infringing items and the quantity of the infringing items.
"(3) Paragraph (1) shall be implemented not later than 3 months after the later of—
    "(A) the first day occurring after May 20, 1999, or
    "(B) the first day after the date of the enactment of this paragraph,
on which sufficient members of the Sentencing Commission have been confirmed to constitute a quorum.
"(4) The Commission shall promulgate the guidelines or amendments provided for under this section in accordance with the procedures set forth in section 21(a) of the Sentencing Act of 1987, as though the authority under that Act had not expired.".

PURPOSE AND SUMMARY

The purpose of H.R. 1761 is to provide more stringent deterrents to copyright infringement and stronger enforcement of the laws enacted to protect intellectual property rights. H.R. 1761 accomplishes this by increasing the statutory penalties in the Copyright Act for copyright infringement, creating a new statutory penalty for situations where infringement is part of a "repeated pattern or practice" of infringement, and clarifying Congress' intent that the United States Sentencing Commission ensure that the sentencing guideline for intellectual property offenses provide for consideration of the retail price of the legitimate infringed-upon item and the quantity of infringing items in order to make the guideline sufficiently stringent to deter such crime.

BACKGROUND AND NEED FOR THE LEGISLATION

Section 106 of the Copyright Act (Title 17 of the U.S. Code) gives the owner of a copyright the " . . . exclusive rights . . . to reproduce . . . [and] distribute copies of . . . the copyrighted work. . . . " An individual who violates any of these exclusive rights is an infringer, and may be subject to civil and criminal penalties set forth in Chapter 5 of the Act and section 2319 of Title 18.

3

Notwithstanding these penalties, copyright piracy of intellectual property flourishes, assisted in large part by today's world of advanced technologies. For example, industry groups estimate that counterfeiting and piracy of computer software cost the affected copyright holders more than $11 billion last year (others believe the figure is closer to $20 billion). In some countries, software piracy rates are as high as 97% of all sales. The U.S. rate is far lower (25%), but the dollar losses ($2.9 billion) are the highest worldwide. The effect of this volume of theft is substantial: lost U.S. jobs, lost wages, lower tax revenue, and higher prices for honest purchasers of copyrighted software.

Unfortunately, the potential for this problem to worsen is great. By the turn of the century the Internet is projected to have more than 200 million users, and the development of new technology will create additional incentive for copyright thieves to steal protected works. The advent of digital video discs, for example, will enable individuals to store far more material than on conventional discs and, at the same time, produce perfect secondhand copies. As long as the relevant technology evolves in this way, more piracy will ensue. Many computer users are either ignorant that copyright laws apply to Internet activity, or they simply believe that they will not be caught or prosecuted for their conduct. Also, many infringers do not consider the current copyright infringement penalties a real threat and continue infringing, even after a copyright owner puts them on notice that their actions constitute infringement and that they should stop the activity or face legal action. In light of this disturbing trend, it is manifest that Congress respond appropriately with updated penalties to dissuade such conduct. H.R. 1761 increases copyright penalties to have a significant deterrent effect on copyright infringement.

Notwithstanding the statutory penalties for copyright infringement, enforcement of those penalties has been minimal. During the first session of the 105th Congress, H.R. 2265, the "No Electronic Theft Act" (NET Act) was enacted into law.[1] The NET Act reversed the practical consequences of *United States* v. *LaMacchia*, 871 F. Supp. 535 (D. Mass. 1994), by criminalizing computer theft of copyrighted works, whether or not the defendant derives a direct financial benefit from the act(s) of misappropriation. However, since the enactment of the NET Act in December 1997, there have been no prosecutions brought by the Department of Justice under the Act. This is important because in order to be successful in the battle against Internet piracy not only must Congress enact legislation giving legal recourse to copyright owners but those laws must be implemented by the appropriate law enforcement agencies.

In May 1999, during hearings on enforcement of the NET Act, representatives of the Department of Justice and the copyright industries testified that the current sentencing guideline—because it is based solely on the value of the infringing items—significantly underrepresents the degree of economic harm inflicted by copyright and trademark crimes.

Sentences for the offenses of criminal copyright infringement and trademark counterfeiting are governed by a sentencing guideline

---

[1] Pub. L. No. 105–47 (December 16, 1997.)

4

designated as § 2B5.3 of the United States Sentencing Commission Guidelines Manual. This guideline sets a Base Offense Level of 6, the same as for fraud or theft offenses involving a loss between $1,000 and $2,000. The guideline also establishes, as the sole aggravating "Specific Offense Characteristic," that if "the retail value of the infringing items exceeded $2,000," then the base level is to be increased by the corresponding number of levels from the monetary loss table in the sentencing guideline for fraud offenses.

The witnesses from the Department of Justice and the copyright industries testified that the sentences imposed under this guideline are too low to deter individuals from trademark counterfeiting and copyright piracy; indeed, according to the Sentencing Commission, approximately 45 percent of intellectual property offenders receive a sentence of probation without any requirement of confinement. Department of Justice officials reported that these low sentences operate as a disincentive for the federal government to commit resources to investigating and prosecuting intellectual property cases, and that few prosecutions and low sentences for those cases that are prosecuted have contributed to the perception of intellectual property crime as a high profit, low risk venture.

In a further attempt to resolve this problem, H.R. 1761 clarifies how Congress intends for the Sentencing Commission to implement the NET Act to provide sufficiently stringent sentencing guidelines to deter intellectual property crime. It is vital that the United States recognizes intellectual property rights and provides strong protection and enforcement against violations of those rights. Federal law enforcement must be armed with effective tools with which to combat this problem. By doing that, the United States will protect its valuable intellectual property and encourage other countries to enact and enforce strong copyright protection laws.

HEARINGS

The Committee's Subcommittee on Courts and Intellectual Property held a hearing on H.R. 1761 on May 12, 1999. Testimony was received from Kevin V. DiGregory, Deputy Assistant Attorney General, Computer Crimes Division, U.S. Department of Justice; Timothy B. McGrath, Interim Staff Director, U.S. Sentencing Commission; Batur Oktay, Corporate Counsel, Adobe Systems, Inc., on behalf of the Business Software Alliance (BSA); Tim Starback, Emigre, Inc., on behalf of the Software and Information Industry Association (SIIA); and Tod Cohen, Vice President and Counsel, New Technology, Motion Picture Association of America (MPAA).

COMMITTEE CONSIDERATION

On May 20, 1999, the Subcommittee on Courts and Intellectual Property met in open session and ordered favorably reported the bill H.R. 1761, as amended, by a voice vote, a quorum being present. On May 26, 1999, the Committee met in open session and ordered favorably reported the bill H.R. 1761 with an amendment in the nature of a substitute by voice vote, a quorum being present.

5

COMMITTEE ON GOVERNMENT REFORM FINDINGS

No findings or recommendations of the Committee on Government Reform were received as referred to in clause 3(c)(4) of Rule XIII of the Rules of the House of Representatives.

NEW BUDGET AUTHORITY AND TAX EXPENDITURES

Clause 3(c)(2) of House Rule XIII is inapplicable because this legislation does not provide new budget authority or increased tax expenditures.

CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

In compliance with clause 3(c)(3) of Rule XIII of the Rules of the House of Representatives, the Committee sets forth, with respect to the bill, H.R. 1761, the following estimate and comparison prepared by the Director of the Congressional Budget Office under section 403 of the Congressional Budget Act of 1974:

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, June 7, 1999.*

Hon. HENRY J. HYDE,
*Chairman, Committee on the Judiciary,*
*House of Representatives, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for H.R. 1761, the Copyright Damages Improvement Act of 1999.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Mark Hadley, who can be reached at 226–2860.

Sincerely,

DAN L. CRIPPEN, *Director.*

*H.R. 1761—Copyright Damages Improvement Act of 1999.*

CBO estimates that enacting this bill would have no significant impact on the federal budget. H.R. 1761 would not affect direct spending or receipts; therefore, pay-as-you-go procedures would not apply. The bill contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act and would not affect the budgets of state, local, or tribal governments.

Under current law, a copyright owner may choose to recover statutory damages for infringement rather than actual damages and lost profits. H.R. 1761 would increase statutory damages and establish new damages for cases in which the copyright owner demonstrates that the infringement was part of a repeated pattern or practice of infringement. Damages for copyright infringement are paid by one private party to another and thus do not affect the federal budget.

Under the No Electronic Theft Act (Public Law 105–147), when the United States Sentencing Commission establishes sentencing guidelines for cases of copyright infringement, the commission must consider the retail value and the quantity of the items. H.R. 1761 would clarify that in most cases the commission must consider the retail value of the legitimate items rather than the value

A. 8

of the infringing items. If the commission elects to enhance prison sentences for copyright infringement, federal costs would rise, subject to the availability of appropriations, to accommodate more prisoners. CBO expects that any increase in discretionary spending over the next five years is likely to be very small.

The CBO staff contact is Mark Hadley, who can be reached at 226–2860. This estimate was approved by Paul N. Van de Water, Assistant Director for Budget Analysis.

CONSTITUTIONAL AUTHORITY STATEMENT

Pursuant to clause 3(d)(1) of the Rule XIII of the Rules of the House of Representatives, the Committee finds the authority for this legislation in Article I, section 8, clause 8 of the Constitution.

SECTION-BY-SECTION ANALYSIS

*Sec. 1. Short Title.*

This section states that H.R. 1761 may be cited as the "Copyright Damages Improvement Act of 1999".

*Sec. 2. Statutory Damages Enhancement.*

Section 2 makes a number of changes to existing statutory damage awards in section 504 of title 17, United States Code. The general purpose of the amendments is to strengthen the deterrent effect of statutory damages on copyright infringement. Copyrighted works are some of the United States' most valuable products. In a world of increasing global utilization and distribution of intellectual property, the United States must take the lead in establishing a legal regime that provides sufficient protection for copyrighted works and encourages other countries to follow suit. Current statutory damage levels were last adjusted in 1988 and do not take into account inflation in the intervening years, increased utilization of certain types of intellectual property, or current trends in global distribution and electronic commerce. Courts and juries must be able to render awards that deter others from infringing intellectual property rights. It is important that the cost of infringement substantially exceed the costs of compliance, so that persons who use or distribute intellectual property have a strong incentive to abide by the copyright laws.

The section makes a number of changes to section 504 of title 17, United States Code. First, section 504(c)(1) is amended to adjust the minimum statutory damage amount for "non-willful" infringement from $500 to $750. This change adjusts the minimum amount upward to reflect inflation over the past eleven years and to otherwise preserve the deterrent effect of the statutory damage penalties.

Second, section 504(c)(1) is amended to adjust the maximum statutory damage amount for "non-willful" infringement from $20,000 to $30,000. This change as well adjusts the maximum amount upward to reflect inflation over the past eleven years and to otherwise preserve the deterrent effect of the statutory damage penalties.

Third, section 504(c)(2) is amended by redesignating the first two sentences as subparagraph "(A)" and by increasing the maximum

7

damage amount for willful infringement from $100,000 to $300,000. This substantial increase reflects not only intervening inflation but also the determination that increased global utilization and distribution of intellectual property and electronic commerce warrant enhanced deterrence in order to prevent copyright infringement. This higher damage amount is fully consistent with other intellectual property precedents. For example, maximum copyright statutory damages for certain violations of the "satellite compulsory license" are $250,000,[2] and the maximum penalty for willful infringement of a trademark is $1 million.[3] It should be noted that the minimum damage amount for a person or entity that shows that it was an "innocent infringer" has not been changed. Thus, in a case where the infringer sustains the burden of proving, and the court finds that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may continue to reduce the award of statutory damages to a sum of not less than $200.

Fourth, a new subparagraph (B) is added to section 504(c)(2) establishing a maximum statutory damage amount of $250,000 for situations where the infringement was part of a "repeated pattern or practice" of infringement. This provision conforms the statutory damage categories available for infringement of all rights protected by the Copyright Act to the "pattern or practice" infringement damages of up to $250,000 for violations of the public performance right in the context of the section 119 "satellite compulsory license."

In creating a new category of statutory damages for "repeated pattern or practice" infringement, the Committee is acting to address situations in which the infringing activity constitutes a course of conduct, not an isolated occurrence. A repeated pattern or practice of infringement is inherently more harmful to the rights of copyright holders and to the interests the copyright laws are designed to protect. Such a pattern or practice should therefore subject the infringer to a higher range of statutory damages than in the case of a single act of infringement. In some instances, persons who are determined to infringe are insufficiently deterred by a first brush with the copyright laws to cease their infringing activity. In other cases, persons engage in infringing activity over a period of time without being detected by the copyright owner. It is intended that these higher damage awards be made available in these and other circumstances where an infringer's activities arise to a "pattern or practice," in order to bring greater deterrence to bear and to promote respect for the law and for the rights of creators and copyright owners.

Finally, a technical and conforming amendment is made to section 504(c)(2) by establishing a new subparagraph (C).

*Sec. 3. Sentencing Commission Guidelines.*

Section 3 amends section 2(g)(2) of the "No Electronic Theft Act" (NET Act), Pub. L. No. 105–147 (December 16, 1997). Section 2(g)(1) is a Directive to the Sentencing Commission. The Directive instructs the Commission to ensure that the applicable guideline

---

[2] 17 U.S.C. § 119(a)(5)(B).
[3] 15 U.S.C. § 1117(c)(2).

8

range for intellectual property crimes be sufficiently stringent to deter such crimes. Section (2)(g)(2) instructs the Commission that in implementing paragraph (g)(1), the Commission must ensure that the guidelines provide for consideration of the retail value and quantity of the items with respect to which the crime against intellectual property was committed. Section 3 of H.R. 1761 amends paragraph (g)(2) to state: "In implementing paragraph (1), the Sentencing Commission shall amend the guideline applicable to criminal infringement of a copyright or trademark to provide an enhancement based upon the retail price of the legitimate items that are infringed upon and the quantity of the infringing items. To the extent the conduct involves a violation of section 2319A of title 18, United States Code, the enhancement shall be based upon the retail price of the infringing items."

H.R. 1761 makes no changes in paragraph (g)(1) of the NET Act Directive. The Committee's clear intent is that sentences for intellectual property crimes should be increased significantly from their present level. The amendment to paragraph (g)(2) reinforces the Committee's intent that the current guideline, with its reliance only on the value of the infringing item, should be replaced with a guideline based on the retail price of the infringed upon (legitimate) items and the quantity of the infringing items in cases arising under 18 U.S.C. 2318, 2319, and 2320.[4] The Committee believes that the retail price of the legitimate items that are infringed upon (multiplied by the quantity of the infringing items) is a more accurate measure of the economic harm caused by these offenses than the measure used by the current guideline.

There may be cases in which multiplying the retail price of the legitimate item by the quantity of infringing items may overstate the economic harm. For example, a defendant selling a counterfeit watch on a street corner for a small fraction of its normal selling price may not warrant a sentence based purely on multiplying the number of sales by the retail price of the legitimate watch. This Directive is not intended to preclude the Commission from developing a guideline that permits reasonable adjustments to the monetary calculation in this type of case, or that provides other appropriate adjustments, aggravating or mitigating, to sufficiently deter copyright and trademark offenses and to meet the other purposes of sentencing as set forth in section 3553(a) of title 18, United States Code.[5] This does not change the fact that the Commission must abide by the Directive, and adopt a guideline that, overall, has the effect of increasing the sentences for violations of intellectual property crimes, whether involving copyrights or trademarks.

Section 3 of H.R. 1761 also grants the Commission emergency amendment authority necessary to amend guideline §2B5.3, regardless of established amendment cycles. Section 3 also imposes a deadline on the Commission to implement paragraph (2)(g) of

---

[4] In §2319A cases, the enhancement must be based on the retail value of the infringing item because there is no commercially-available, genuine counterpart for the types of unauthorized recordings of live musical performances which this section prohibits. If the criminal conduct did not occur for commercial purpose or private financial gain, the "retail price" should be determined from the price of comparable items.

[5] The Committee amended H.R. 1761 to take a broader approach than the version of the bill reported by the Subcommittee on Courts and Intellectual Property, which directed the Commission to use "the retail price of the infringed-upon goods and quantity of the items as the *exclusive* basis for determining the total retail value of those items." (Emphasis added).

A. 11

9

"not later than 3 months after the later of (A) the first day occurring after May 20, 1999, or (B) the first day after the date of the enactment of this paragraph, on which sufficient members of the Sentencing Commission have been confirmed to constitute a quorum." The Committee believes that expeditious action is necessary given the magnitude of the growing problem of crimes against intellectual property.

CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3(e) of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italics, existing law in which no change is proposed is shown in roman):

## SECTION 504 OF TITLE 17, UNITED STATES CODE

### § 504. Remedies for infringement: Damages and profits

(a)  *  *  *

\*       \*       \*       \*       \*       \*       \*

(c) STATUTORY DAMAGES.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than 【$500】 *$750* or more than 【$20,000】 *$30,000* as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2)*(A)* In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than 【$100,000】 *$300,000*. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. *(B) In a case where the copyright owner demonstrates that the infringement was part of a repeated pattern or practice of infringement, the court may increase the award of statutory damages to a sum of not more than $250,000 per work.* 【The court shall remit statutory damages】 *(C) The court shall remit statutory damages* in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was: (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such

A. 12

10

institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in subsection (g) of section 118) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

———————

## SECTION 2 OF THE NO ELECTRONIC THEFT ACT

**SEC. 2. CRIMINAL INFRINGEMENT OF COPYRIGHTS.**

(a) * * *

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(g) DIRECTIVE TO SENTENCING COMMISSION.—(1) * * *

⟦(2) In implementing paragraph (1), the Sentencing Commission shall ensure that the guidelines provide for consideration of the retail value and quantity of the items with respect to which the crime against intellectual property was committed.⟧

*(2) In implementing paragraph (1), the Sentencing Commission shall amend the guideline applicable to criminal infringement of a copyright or trademark to provide an enhancement based upon the retail price of the legitimate items that are infringed upon and the quantity of the infringing items. To the extent the conduct involves a violation of section 2319A of title 18, United States Code, the enhancement shall be based upon the retail price of the infringing items and the quantity of the infringing items.*

*(3) Paragraph (1) shall be implemented not later than 3 months after the later of—*

　*(A) the first day occurring after May 20, 1999, or*

　*(B) the first day after the date of the enactment of this paragraph,*

*on which sufficient members of the Sentencing Commission have been confirmed to constitute a quorum.*

*(4) The Commission shall promulgate the guidelines or amendments provided for under this section in accordance with the procedures set forth in section 21(a) of the Sentencing Act of 1987, as though the authority under that Act had not expired.*

○

A. 13



S. Hrg. 108–275

# PRIVACY AND PIRACY: THE PARADOX OF ILLEGAL FILE SHARING ON PEER-TO-PEER NETWORKS AND THE IMPACT OF TECHNOLOGY ON THE ENTERTAINMENT INDUSTRY

# HEARING

BEFORE THE

## PERMANENT SUBCOMMITTEE ON INVESTIGATIONS

OF THE

## COMMITTEE ON GOVERNMENTAL AFFAIRS UNITED STATES SENATE

ONE HUNDRED EIGHTH CONGRESS

FIRST SESSION

SEPTEMBER 30, 2003

Printed for the use of the Committee on Governmental Affairs

U.S. GOVERNMENT PRINTING OFFICE

90–239 PDF      WASHINGTON : 2004

For sale by the Superintendent of Documents, U.S. Government Printing Office
Internet: bookstore.gpo.gov   Phone: toll free (866) 512–1800; DC area (202) 512–1800
Fax: (202) 512–2250   Mail: Stop SSOP, Washington, DC 20402–0001

A. 14

10

Senator COLEMAN. With that, I would like to turn the podium over to my distinguished Ranking Member, the Senator from Michigan, Senator Levin.

**OPENING STATEMENT OF SENATOR LEVIN**

Senator LEVIN. Thank you, Mr. Chairman. Thank you very much for calling this hearing. It is a very critically important hearing for the reasons that you gave and Senator Boxer gave and your leadership is going to be critically important in trying to find a resolution to the issues which you describe.

Today, we face a collision of two worlds. One is the world of copyright law. The other is the real world, where new Internet technologies like file sharing are enabling hundreds of millions of people to instantly exchange movies, music, and other copyrighted works online for free. In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines. In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking—illegal but no big deal.

But it is a big deal. Under U.S. law, stealing intellectual property is just that—stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used—called "file sharing," as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm.

The Internet and related technologies, if used properly, have the potential to expose millions of people to creative work that would otherwise not be seen or heard. The question is whether their potential will be realized at the expense of artists, authors, software developers, scientists, and others who rely on copyright protection to earn a living.

The issue we will be struggling with today is what to do about what I hope is acknowledged to be a problem. How do we instill in people that downloading a song or a movie off the Internet, without permission, is like stealing a CD from a store? If the recording industry's approach—filing lawsuits against alleged infringers—is not the right answer, what is the right answer? Is it technologically feasible for software developers to take steps to prevent their software from being misused to steal copyright works? If so, are they willing to take these steps voluntarily or must we require them to do so?

Our copyright laws were designed to protect a person's intellectual property—a song, an invention, a work of art, a novel. But the use of new file-sharing software is growing so rapidly that the law has badly lagged behind.

The Subcommittee obtained copies of more than 1,000 RIAA subpoena requests and subjected them to a general review as well as subjecting 42 randomly selected requests to a more detailed investigation. The Subcommittee's detailed review of the 42 subpoenas found that the Internet user with the fewest number of songs had made available about 600 songs for others to copy, while the Internet user with the highest number exceeded 2,100 songs. Many had made over 1,000 songs available for copying on the Internet. There

11

was no evidence, in this survey at least, of subpoenas directed to users who had made available only a few songs.

Software providers will play a key role in determining whether their file-sharing technologies evolve into tools that promote respect for creative work or instead promote copyright infringement. Certain developments so far have not inspired confidence.

With regard to protecting copyrights, the largest software provider apparently failed to incorporate some elements that could help fight infringement and that company has taken steps that hinder rather than facilitate timely reminders from copyright holders to file sharers that the unauthorized sharing of copyrighted materials violates U.S. law. While people who download copyrighted works and make them available for others to copy should be held accountable for their actions, those providing the underlying software should also take reasonably available steps to protect copyrights.

Internet technologies are changing how many Americans find, listen to, and buy music and movies. Trips to record stores are giving way to sessions on the Internet. Movie videos are increasingly online and available to those with Internet know-how. We must search for ways to accommodate the reasonable and appropriate use of these new technologies while also maintaining the integrity of copyright laws critical to protecting and encouraging creative work.

Again, I thank you, Mr. Chairman, for calling this hearing and for your leadership in this area.

The prepared opening statement of Senator Levin follows:

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **COBBLER NEVADA, LLC.,** | Case No.3:15-cv-01769-SB |
| Plaintiff, | STIPULATED CONSENT JUDGMENT |
| v. | |
| **GINA SNAPP,** | |
| Defendant | |

STIPULATED CONSENT JUDGMENT

As attested to by the signatures of counsel for the parties below, this matter comes before the Court on the parties' joint stipulation.

Plaintiff Cobbler Nevada, LLC, has filed a Complaint against the defendant in the Oregon District Court for copyright infringement, 17 U.S.C. §§101, et seq, for the unlicensed copying, promotion and distribution of plaintiff's motion picture titled *The Cobbler*, registered with the United States Copyright Office, Reg. No. PAu 3-744-688, 2014.

After initial discovery and investigation, defendant, was affirmatively identified as the proper defendant in this matter.

The parties, after conferral and investigation, now appear through counsel to fully and finally resolve all claims between the parties and the matters before the Court and have moved for entry of this Stipulated Consent Judgment to effect the terms of their settlement.

WHEREFORE IT IS HEREBY STIPULATED AND ORDERED for all matters relevant to this case between the parties as follows:

1. This court has jurisdiction over the parties and venue is proper.

2. Plaintiff Cobbler Nevada, LLC has valid and enforceable copyrights in the original copyrighted work, *The Cobbler*, ("motion picture") registered with the United States Copyright Office, Reg. No. PAu 3-744-688.

3. Gina Snapp is the proper named defendant in this case and liable under plaintiff's claims.

4. Plaintiff and Gina Snapp expressly consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including entry of orders, including this stipulation or any other final judgment or orders arising therefrom.

5. Gina Snapp and her counsel have fully reviewed the Complaint and the allegations of the Complaint and specifically admit plaintiff's investigations accurately identified the IP address Gina Snapp used to download and distribute plaintiff's motion picture identified with the Complaint.

6. Pursuant to the settlement agreement of the parties, the below Permanent Injunction is to be entered against Gina Snapp.

7. Pursuant to the settlement agreement of the parties, the below Money Judgment is to be entered against Gina Snapp. Though the below Money Judgment is valid and enforceable, plaintiff agrees that on compliance with the terms of the below Permanent Injunction plaintiff shall not execute or enforce the Money Judgment.

///

CONSENT JUDGMENT – STIPULATED

A. 18

## MONEY JUDGMENT

A Money Judgment is entered in favor of plaintiff Cobbler Nevada and against defendant Gina Snapp in the amount of $7,500.00 for damages, costs and fees.

## PERMANENT INJUNCTION

Gina Snapp is hereby PERMANENTLY ENJOINED from knowingly directly, contributorily or indirectly infringing plaintiff's rights in its motion picture, including without limitation by using the internet to reproduce or copy *The Cobbler*, to distribute *The Cobbler*, or to make *The Cobbler* available for distribution to the public, except pursuant to a lawful written license from plaintiff; and

Gina Snapp is hereby directed to immediately delete all unlicensed content subject to her control in which Cobbler Nevada has any rights or interest.

Except as provided herein, each party is to bear their own costs and fees.

With entry of this Consent Judgment, this matter is terminated.

SO ORDERED, this day: *April 4, 2016* .

_____

United States Magistrate Judge

///
///

Case 3:15-68-01782-SI Document 19-2 Filed 04/04/18 Page 51 of 53

So Stipulated and Respectfully Submitted:

On Behalf of Defendant:                           On Behalf of Plaintiff:

*/s/ James E. Geringer*                           */s/ Carl D. Crowell*
James E. Geringer, OSB No. 951783                 Carl D. Crowell, OSB No. 982049
email: james.geringer@klarquist.com               email: carl@crowell-law.com
KLARQUIST SPARKMAN, LLP                            Drew P. Taylor, OSB No. 135974
121 S.W. Salmon Street, Suite 1600                 email: drew@crowell-law.com
Portland, Oregon 97204                             Crowell Law
Telephone: (503) 595-5300                          P.O. Box 923
                                                   Salem, OR 97308-0923
                                                   Phone: 503-581-1240
                                                   Of counsel for plaintiff
Defendant Personally:

*/s/ Gina Snapp*
Gina Snapp

CONSENT JUDGMENT – STIPULATED                                    Page 4 of 4

A. 20

## **Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28-1.1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** _____

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*
I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28-1.1.
The brief is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [6090] words or [32] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [      ]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [      ] words or [      ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

| Signature of Attorney or Unrepresented Litigant | s/ Carl D. Crowell | Date | Dec 28, 2016 |
|---|---|---|---|

("s/" plus typed name is acceptable for electronically-filed documents)

CERTIFICATE OF SERVICE

Case Number 16-35688

I hereby certify I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeal for the Ninth Circuit by using the appellate CM/ECF system on December 28, 2016 and that all parties are to be properly served through the CM/ECF System.

DATED: December 28, 2016.


/s/  Carl D. Crowell
Carl D. Crowell, OSB No. 982049
email:  carl@crowell-law.com
503-581-1240
Crowell Law
P.O. Box 923
Salem, OR 97308